Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1128 | **DATE** | 4/8/2004 |
| **CASE TITLE** | Conway vs. Medical Staffing Network, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion to Remand

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Before the court is Plaintiff's Motion to Remand [2-1]. For the reasons stated on the attached order, Conway's motion [2-1] is granted in part and denied in part. To the extent that Conway's motion seeks remand to the Circuit Court of Cook County, Illinois; the motion [2-1] is GRANTED. To the extent that Conway's motion seeks attorney fees and costs; the motion [2-1] is DENIED. The Clerk shall remand this case to the Circuit Court of Cook County, Illinois, pursuant to Local Rule 81.2(b). It is so ordered. (See reverse.)
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | APR 12 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MAUREEN CONWAY, | )<br>) |
| Plaintiff, | )<br>) |
| | ) Case No. 04 C 1128 |
| v. | )<br>) |
| | ) Judge Charles R. Norgle |
| MEDICAL STAFFING<br>NETWORK INC., | )<br>)<br>) |
| Defendant. | )<br>) |

APR 12 2004

## OPINION AND ORDER

Before the court is Plaintiff's Motion to Remand. For the following reasons, Plaintiff's motion is granted in part and denied in part.

## I. BACKGROUND

Defendant Medical Staffing Network ("MSN") supplies nurses to various clients, including hospitals. Plaintiff Maureen Conway is a registered nurse who was employed by MSN as a branch manager from December 2001 through November 2002. Compl. ¶ 1. Conway's duties included the management and supervision of all operations within her branch, including the responsibility of providing nurse staffing services to MSN's clients. Compl. ¶ 7.

On November 1, 2002, a representative of Provina St. Joseph's, a site staffed by MSN, notified Conway to discuss the investigation of a narcotics theft by one of MSN's nurses. Compl. ¶ 8. Shortly thereafter, Conway informed her immediate supervisor at MSN, Pat Graff, that she intended to notify the Illinois Department of Professional Regulation ("IDPR") of the suspected narcotic theft. Compl. ¶¶ 9, 10. Conway alleges that she is required to do so under Illinois law, 225

1



ILCS 65/28.[1] Compl. ¶ 9. Graff then informed Conway that she should "think long and hard" before reporting the incident to IDPR because it may jeopardize MSN's relationship with Provina St. Joseph's. Compl. ¶ 11. On November 6, 2002, Conway reported the incident to IDPR. Id.

On November 7, 2002, a representative from Provina St. Joseph's informed Conway of its intention to terminate its staffing contract with MSN. Compl. ¶ 12. Conway then related this information to Graff. Compl. ¶ 13. On November 11, 2002, Graff instructed Conway to prepare an incident report about the suspected narcotic theft investigation. Compl. ¶ 16. Upon Graff's insistence, Conway submitted the report indicating that she reported the incident to IDPR. Compl. ¶¶ 17, 18. Several hours later, Graff terminated Conway's employment. Compl. ¶ 19. Ultimately, Conway alleges that she was terminated because she reported the suspected narcotic theft to IDPR, as she claims she is required to do under the law. Compl. ¶ 22.

On May 14, 2003, Conway filed this action in the Circuit Court of Cook County, Illinois. The sole count in her Complaint alleges a state law claim of retaliatory discharge. Conway's Complaint seeks compensatory damages in an amount "in excess of $50,000," which is the minimum jurisdictional requirement for pleading in the Law Division in the Circuit Court of Cook County, Illinois, and any "other relief the Court deems appropriate." Def.'s Notice of Removal, Ex. A.

On July 24, 2003, MSN answered Conway's Complaint in the state court. On August 1, 2003, MSN sought, by way of interrogatory, a specific damage award, including the amount and manner of calculation. On October 3, 2003, Conway responded by indicating that she is seeking "actual compensatory [sic] to compensate the Plaintiff for lost wages of approximately $60,000,

---

[1] Neither counsel has provided the court with the specific language upon which Conway relies in construing the statute to prescribe such a duty. See 225 ILCS 65/28 (repealed by P.A. 90-742, § 20, effective July 1, 1998).

damages to her reputation in the industry, and punitive damages to punish and prevent the Defendant from wrongfully terminating employees in the future." Def.'s Resp. to Pl.'s Mot. to Remand, Ex. D. When asked to clarify this response with more specificity, Conway's counsel indicated that Plaintiff would seek "compensatory" damages below $75,000. See id. On November 26, 2003, MSN's counsel once again requested clarification of the amount of damages sought by Plaintiff, however they were unsuccessful in obtaining a satisfactory answer. On January 29, 2004, MSN advised Conway's counsel that it was planning to remove the case to federal court unless, by January 30, 2004, Conway represented that the total damages sought in the case are below the $75,000 jurisdictional limit. See id., Ex. J. On February 13, 2004, without receiving any response to its January 29, 2004 inquiry, MSN filed its Notice of Removal.

On February 20, 2004, Conway filed her Motion to Remand. In her motion, Conway asserts the following two arguments in support of her position that the removal was improper: (1) the court lacks subject matter jurisdiction under 28 U.S.C. § 1332, and (2) the removal was untimely. Additionally, Conway requests attorney fees and costs pursuant to 28 U.S.C. § 1447(c). Conway's motion is fully briefed and now before the court.

## II. DISCUSSION

### A. Motions to Remand

The district court's authority to remand a case to state court is determined by the terms of the removal statute and the limits of the court's subject matter jurisdiction. See In re Continental Casualty Co., 29 F.3d 292, 293-95 (7th Cir. 1994); Buchner v. F.D.I.C., 981 F.2d 816, 819-20 (5th Cir. 1993); Commonwealth Edison Co. v. International Broth. of Elec. Workers, 961 F. Supp. 1154, 1164-65 (N.D. Ill. 1996); Casey v. Hinckley & Schmitt, Inc., 815 F. Supp. 266, 267 (N.D. Ill. 1993);

3

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3739, pg. 467 (West 1998). In other words, the court does not have authority to remand a case that is within its jurisdiction, unless the removal statute permits the court to do so. See In re Continental Casualty Co., 29 F.3d at 293-95; Buchner, 981 F.2d at 819-20; Commonwealth Edison Co., 961 F. Supp. at 1164-65. Generally, the removal statute is strictly construed, with an eye towards limiting federal jurisdiction. See, e.g., Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 357 (1999) (Rehnquist, J. dissenting); Getty Oil Corp. v. Insurance Company of North America, 841 F.2d 1254, 1263 n.13 (5th Cir. 1988). At the same time, however, the court does not have the authority to act outside the bounds of the removal statute, so as to relinquish its properly invoked jurisdiction. See In re Continental Casualty Co., 29 F.3d at 293-95; Buchner v. F.D.I.C., 981 F.2d 816, 819-20 (5th Cir. 1993); Commonwealth Edison Co., 961 F. Supp. at 1164-65; Casey, 815 F. Supp. at 267; Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3739, pg. 467. With these principles in mind, the court addresses Conway's motion.

**B. Subject Matter Jurisdiction**

Conway argues that the court lacks subject matter jurisdiction over this matter, and therefore, she asserts that the removal was improper. The Seventh Circuit has recently reiterated the need for litigants to meticulously review the limits of federal jurisdiction to prevent the waste of federal judicial resources. See Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691 (7th Cir. 2003); see also Hart v. Terminex International, 336 F.3d 541, 541-42 (7th Cir. 2003). The federal courts are "always obliged to inquire sua sponte whenever a doubt arises as to the existence of federal jurisdiction." Tylka v. Gerber Prods. Co., 211 F.3d 445, 447-48 (7th Cir. 2000) (quotation and internal marks omitted). "The first thing a federal judge should do when a complaint is filed is

check to see that federal jurisdiction is properly alleged." Wisconsin Knife Works v. National Metal Crafters, 781 F.2d 1280, 1282 (7th Cir. 1986). In Market Street Assocs. Ltd. Partnership v. Frey, the Seventh Circuit stated: "We remind the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care. . . ." Market Street Assocs. Ltd Partnership, 941 F.2d 588, 590 (7th Cir. 1991). The district court must therefore jealously guard its limited jurisdiction. See In re Shell Oil Co., 966 F.2d 1130, 1133 (7th Cir. 1992); see also Douglas v. E.G. Baldwin & Associates, Inc., 150 F.3d 604, 606 (6th Cir. 1998).

Where a party seeks remand by citing defects in the removal procedure, the burden is on the party attempting to invoke federal jurisdiction to demonstrate that the removal was proper. See Del Vecchio v. Conseco, Inc., 230 F.3d 974, 979 (7th Cir. 2000) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). Thus, in a removal case in which federal jurisdiction is based solely upon diversity of citizenship, the defendant bears the burden of establishing that the parties are of diverse citizenship and that the amount in controversy satisfies the jurisdictional requirement. See 28 U.S.C. § 1332; see also Del Vecchio, 230 F.3d at 979.

In this case, MSN asserts that the court has subject matter jurisdiction under §1332. Based on the pleadings before the court, there is complete diversity between the parties. Conway is a citizen of Illinois. MSN is a citizen of both Delaware and Florida. Therefore, the parties are of diverse citizenship.

However, with respect to the amount in controversy, it is unclear as to whether the jurisdictional limit of $75,000 is satisfied. Subject matter jurisdiction is determined at time of the removal. See Johnson v. Wattenbarger, -- F.3d --, No. 02-3707, 2004 U.S. App. LEXIS 5338, at * 4-5 (7th Cir. March 22, 2004) (noting that subject matter jurisdiction under §1332 is determined at

the time the complaint is filed in the district court). Where punitive damages are necessary to satisfy the jurisdictional amount, the court considers the complaint and any discovery responses tendered to it. See Anthony v. Security Pacific Financial Services, Inc., 75 F.3d 311, 316 (7th Cir. 1996). In making this inquiry, the court must ask two questions: "The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1211-12 (7th Cir. 1992) (quoting Risse v. Woodard, 491 F.2d 1170, 1173 (7th Cir. 1974)). In other words, a complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. See Del Vecchio, 230 F.3d at 978; see also Schlessinger v. Salimes, 100 F.3d 519, 521 (7th Cir. 1996). This critical inquiry is necessary to prohibit parties from undermining the federal court's jurisdiction. See Del Vecchio, 230 F.3d at 978-79.

Here, the first question the court must address is whether punitive damages are recoverable on Conway's retaliatory discharge claim. The tort of retaliatory discharge is a limited and narrow cause of action in Illinois. See Bea v. Bethany Home, Inc., 775 N.E.2d 621, 623 (Ill. App. Ct. 2002). To establish a cause of action for retaliatory discharge, Conway must show that: "(1) [s]he was discharged in retaliation for [her] activities; and (2) the discharge contravenes a clearly mandated public policy." Id. Essentially, Illinois law allows retaliatory discharge actions in two situations: (1) where an employee is discharged for filing a claim for workers' compensation, and (2) where an employee is discharged for reporting illegal or improper conduct. See Howard v. Zach Co., 637 N.E.2d 1183, 1190 (Ill. App. Ct. 1994). Conway alleges that she was terminated for reporting the suspected narcotics theft from a medical institution to IDPR, which she claims she was required to

do under Illinois law. This is sufficient to plead a cause of action for retaliatory discharge in Illinois. See Bea, 775 N.E.2d at 623; see also Howard, 637 N.E.2d 1190.

However, pleading a cause of action for retaliatory discharge in Illinois, by itself, is not enough to confer federal subject matter jurisdiction. The court also must decide, based on the pleadings before it, whether Illinois law allows Conway to recover punitive damages on her claim. See Kelsay v. Motorola, Inc., 384 N.E.2d 353, 359 (Ill. 1978) (noting that although the jury determines the measure of punitive damages, the preliminary question of whether the facts justify the imposition of punitive damages is a question of law). In Illinois, punitive damages are allowed in a retaliatory discharge case. See id. Although allowed, however, they are not automatic. See Bea, 775 N.E.2d at 623; see also Dixon Distributing Co. v. Hanover Insurance Co., 641 N.E.2d 395, 399 (Ill. 1994) (noting that punitive damages are not required in every retaliatory discharge action). For Conway to recover punitive damages, a fact-finder must be able find that MSN's actions were committed with fraud, actual malice, deliberate violence or oppression, or that it acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. See Kelsay, 384 N.E.2d at 359.

Conway's Complaint does not allege that MSN's actions were willful, fraudulent or committed with actual malice, deliberate violence or oppression, or with gross negligence. The facts, as alleged, only indicate that MSN terminated Conway because she reported the suspected narcotics theft to IDPR. See Compl. ¶¶ 14-22. These allegations, without anything more, are not enough to determine whether Conway is entitled to punitive damages on her retaliatory discharge claim. See, e.g., Dixon Distributing, 641 N.E.2d at 399 (finding that intentional retaliatory conduct does not assume that the defendant acted with actual malice). Similarly, the discovery responses submitted

by MSN provide no additional facts which would justify an award of punitive damages. Conway also does not pray for punitive damages in her Complaint. Although she did acknowledge her intention to seek punitive damages in response to MSN's interrogatory request, she has not sought to amend her Complaint to reflect this claim. Thus, on the face of the Complaint, which does not specifically request punitive damages, MSN, wary as it may be, has not shown beyond mere argument that a fact-finder might possibly award punitive damages, or that they are recoverable in this instance. See Anthony, 75 F.3d at 316-17 (finding no competent proof of jurisdiction where plaintiffs relied solely on facts alleged in complaint, which described conduct not egregious enough to justify punitive damages under Illinois law); see also McNutt, 298 U.S. at 189 (stating that when "allegations of jurisdictional facts are challenged . . . in any appropriate manner, [the party alleging jurisdiction] must support them by competent proof;" and if unchallenged, the federal courts "may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence").

Nevertheless, even if Conway were entitled to recover punitive damages on her retaliatory discharge claim, the court is still not convinced it would have subject matter jurisdiction. In many cases where punitive damages are possible, the amount in controversy will likely exceed the jurisdictional limit under §1332. However, the court cannot assume this is always the case. Where the ratio of punitive to compensatory damages is imbalanced, the court must look closely to determine whether it has jurisdiction. See Smith v. American General Life and Acc. Ins., 337 F.3d 888, 896 (7th Cir. 2003). "[I]f it appears to a legal certainty that the claim for the requisite level of punitive damages cannot be sustained, then regardless of how much the plaintiff seeks in punitive damages, relative to compensatory damages, she cannot count the punitive damages toward the jurisdictional minimum." Id. (citing Bell v. Hood, 327 U.S. 678, 682-83 (1946)).

8

MSN argues that because Conway agreed not to seek a compensatory damage award in excess of $60,000; and because she is seeking punitive damages, which are allowed under Illinois law; the amount in controversy requirement of $75,000 is satisfied. MSN reasons that if Conway were to prevail on her claim and is awarded compensatory damages of $60,000, any additional award of punitive damages, if any, would certainly be for more than $15,000. However, MSN's reasoning is flawed because it assumes that Conway is entitled to $60,000 in compensatory damages under the law. But subject matter jurisdiction cannot be based on agreements made between the parties alone. See id. at 893. The court must conduct an independent inquiry into whether the jurisdictional limit has been satisfied. See id.

In this case, there is nothing before the court which indicates that Conway is entitled to an amount of $60,000 in compensatory damages. For example, when asked the question, in effect, how soon after leaving MSN did you find a new job, Conway stated she is presently employed. See Def.'s Response to Pl.'s Mot. to Remand, Ex. A, at 2, 8-9. The obfuscation leads to the inference that a clear answer would not support a claim of $60,000 in lost wages. The failure to indicate the period of unemployment suggests, under the circumstances of this case, brevity. Additional interrogatories from MSN provided the opportunity for Conway to say, for example, lost wages are six months at the $5,000 monthly rate, my monthly pay at the time of my termination. However, Conway provided no such details, and MSN took no judicial action to compel a clear response. The lack of clarity on the issue is further established by Conway's assertion that her claim for damage to her reputation was included in the $60,000 figure. See Pl.'s Reply in Supp. of her Mot. to Remand, at 3. Any potential damage figure at this stage is mere speculation, and, indeed, Conway merely lumps it into the $60,000 figure. See Merriweather v. Family Dollar Stores of Indiana, 103

F.3d 576, 581 (7th Cir. 1996) (indicating that damages must be proportional to the actual injury caused by the defendant); see also Avita v Metropolitan Club of Chicago, 49 F.3d 1219, 1229 (7th Cir. 1995) (same). The possibility of recovery would be complicated by the application of the doctrine of substantial truth. See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 516-17 (1991).

In keeping with the Seventh Circuit's mandate to jealously guard the limited jurisdiction of the federal court, the district court must conduct its own thorough inquiry into the facts supporting jurisdiction. Where a generalized amount of lost wages for an undisclosed time is pleaded, and other damages are vague, the potential for punitive damages to carry the total damages beyond $75,000 is not established for jurisdictional purposes. As a result, MSN has not met its burden of establishing that the jurisdictional limit under 28 U.S.C. § 1332 is satisfied.

## C. Timeliness of Removal and Attorney Fees

Conway also argues that the removal was untimely because MSN did not comply with the rules which authorize removal. Specifically, Conway argues that MSN filed its Notice of Removal well after it was authorized to do so under 28 U.S.C. § 1446(b) and Local Rule 81.2(a). However, for the reasons stated above, the court does not have sufficient information to determine whether MSN's Notice of Removal was timely filed. See *supra*, Part II.B.

Finally, Conway seeks attorney fees and costs incurred as a result of the unsuccessful removal. Under 28 U.S.C. § 1447(c), upon issuing an order of remand, the court may award the plaintiff attorney fees, costs, and expenses incurred as a result of the removal. Such an award is within the court's discretion. See Tenner v. Zurek, 168 F.3d 328, 330 (7th Cir. 1999).

In this case, an award of attorney fees and costs is not warranted. MSN's attorneys sent numerous requests to Conway's attorney for clarification on the amount of damages sought. This was a diligent attempt to discover information relevant to determine subject matter jurisdiction. Conway's responses to these requests were, at times, illusive and non-responsive to the questions posed. This evasive conduct on the part of Conway's counsel, no doubt to avoid litigating the matter in the federal court, clearly contributed to the vague record which is now before the court. Therefore, Conway is not entitled to attorney fees and costs incurred as a result of the removal.

### III. CONCLUSION

For the foregoing reasons, Conway's motion to remand is granted in part and denied in part. To the extent that Conway's motion seeks remand to the Circuit Court of Cook County, Illinois; the motion is GRANTED. To the extent that Conway's motion seeks attorney fees and costs; the motion is DENIED.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 4/8/04